UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| -against- | **ORDER** |
| SANDY GOMEZ, | 15 Cr. 348 (PGG) |
| Defendant. | |

PAUL G. GARDEPHE, U.S.D.J.:

        In a motion dated September 22, 2021, Defendant Sandy Gomez seeks an order

pursuant to 18 U.S.C. § 3582(c)(1)(A) granting him compassionate release. (Dkt. No. 262) For

the reasons stated below, the Defendant's application will be denied.

I.      **BACKGROUND**

        On November 10, 2016, a jury convicted Gomez of conspiring to distribute and

possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C.

§§ 841(b)(1)(A) and 846. (Trial Tr. (Dkt. No. 131) at 164) The evidence at trial demonstrated

that Gomez – who was arrested in possession of five kilograms of cocaine – had conspired to

distribute and possess with intent to distribute 50 to 100 kilograms of cocaine. (Sent. Tr. (Dkt.

No. 172) at 9-10) Gomez also committed perjury at trial, and he obstructed justice by attempting

to persuade a co-conspirator and Government cooperating witness to blame the cocaine

trafficking offense on his brother, Jorge Gomez. (Id. at 10, 15) Gomez faced a Guidelines range

of 188 to 235 months' imprisonment. (Id. at 20) At Gomez's May 2, 2017 sentencing, this

Court granted a modest variance, sentencing him to 164 months' imprisonment. The Court

concluded that a variance was appropriate in light of, inter alia, Gomez's age, good behavior

while on pretrial release, employment history, and lack of a criminal record over the eighteen years that preceded the instant case.  (Id. at 30-31; Judgment (Dkt. No. 174) at 2)

Gomez was remanded after the jury returned a guilty verdict on November 10, 2016, and he has been in custody since that time.  He has thus served less than half of his sentence.  (PSR (Dkt. No. 171) at 26; Govt. Br. (Dkt. No. 264) at 8)  His projected release date is January 9, 2028.  (Def. Mot. (Dkt. No. 262) at 2)

## II.     GOMEZ'S COMPASSIONATE RELEASE APPLICATION

On March 3, 2021, Gomez applied to the warden of Federal Correctional Institution-Berlin ("FCI Berlin") for compassionate release.  (Def. Mot. (Dkt. No. 262) at 15) The warden denied his request on May 24, 2021.  (Id. at 15-16)

On September 22, 2021, Gomez filed a motion with this Court for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  (Def. Mot. (Dkt. No. 262))  Gomez contends that he is entitled to compassionate release because he is "at risk of COVID-19 health related issues due to obesity and respiratory difficulties."  (Id. at 5)  Gomez also states that his "children[] need [him] to take care of them because their mother is struggling with mental health issues."  (Id.)

The Government opposes Gomez's application, contending that (1) Gomez has not exhausted his administrative remedies; (2) Gomez has not shown "extraordinary and compelling reasons" warranting his release; and (3) the Section 3553(a) factors counsel against granting his application.  (Govt. Br. (Dkt. No. 264) at 3)

## DISCUSSION

## I.     LEGAL STANDARD

The compassionate release statute – 18 U.S.C. § 3582(c)(1)(A) – provides that a court may

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant . . . reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . .

18 U.S.C. § 3582(c)(1)(A).

A defendant seeking compassionate release must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or "30 days [must have lapsed] from the receipt of such a request by the warden of the defendant's facility." Id.

Where a defendant has exhausted his administrative remedies, a court considering an application for compassionate release must weigh the factors set forth in 18 U.S.C. § 3553(a) and determine whether there are "extraordinary and compelling reasons [that] warrant . . . a [sentence] reduction."  18 U.S.C. § 3582(c)(1)(A)(i).  "[T]he district court has broad discretion in evaluating a defendant's motion for compassionate release," United States v. Vargas, 502 F. Supp. 3d. 820, 824 (S.D.N.Y. 2020), and may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them . . . ." United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020).

II.   **ANALYSIS**

A.   **Exhaustion of Administrative Remedies**

"[T]o be eligible for relief based on changed circumstances, Defendant must first seek relief from the BOP."  United States v. Foozailov, 17 Cr. 262 (LGS), 2021 U.S. Dist. LEXIS 20774, at *2-3 (S.D.N.Y. Feb. 3, 2021) (citing United States v. Padilla, No. 18 Cr. 454 (KPF), 2021 WL 242463, at *2 (S.D.N.Y. Jan. 25, 2021); United States v. Nwankwo, No. 12 Cr. 31 (VM), 2020 WL 7335287, at *1 (S.D.N.Y. Dec. 14, 2020))).

In his submission to the warden of FCI Berlin, Gomez argued that he was entitled to compassionate release because "I have over []50 [percent] of time complete, I have trouble breathing and smoked my whole life, I have a non-violent crime . . . [and] also need to be released to help take care of my mother because she is elderly, ill and no one else is available to take care of her."  (Govt. Br., Ex. A (Dkt. No. 264-1))

In applying to the warden for compassionate release, Gomez did not argue – as he does now (Def. Mot. (Dkt. No. 262) at 5) – that his obesity makes him susceptible to the COVID-19 virus, and that his release is necessary because his wife is struggling with mental health issues and can no longer care for their children.  (Compare id. with Govt. Br., Ex. A (Dkt. No. 264-1))  Having not sought compassionate release from the warden based on the facts presented here, Gomez's application for compassionate release must be denied for failure to exhaust administrative remedies.  See, e.g., Nwankwo, 2020 WL 7335287, at *1 ("Assuming . . . that these are new bases for compassionate release, exhaustion of [the Defendant's] renewed request would be required.").

**B.**      **"Extraordinary and Compelling Reasons"**

Even if Gomez had exhausted his administrative remedies, his application would be denied because of his failure to put forth "extraordinary and compelling reasons [that] warrant . . . a reduction" in his sentence.  18 U.S.C. § 3582(c)(1)(A)(i).

Gomez contends that he is entitled to compassionate release because he suffers from "obesity and respiratory difficulties."  (Def. Mot. (Dkt. No. 262) at 5)  As a result of these medical conditions, the COVID-19 virus presents a greater risk to Gomez than to other inmates. (Id.)  In support of his application, Gomez has submitted an inmate bulletin dated July 31, 2021 from the warden of FCI Berlin, in which the warden states that three inmates have tested positive for COVID-19.  (Id. at 18)

There is no question that COVID-19 presents a significant risk to inmates.  See United States v. Stephens, 447 F. Supp. 3d 63, 65 (S.D.N.Y. 2020) (citing United States v. Raihan, No. 20 Cr. 68 (BMC) (JO), Dkt. No. 20 at 10:12–19 (E.D.N.Y. Mar. 12, 2020)).  Nor is there any question that the inmates and staff across the Bureau of Prisons ("BOP") are facing significant challenges as a result of the COVID-19 pandemic.  However, according to the BOP's website, Federal Correctional Institution-Bastrop ("FCI Bastrop"), where the Defendant is now incarcerated, currently has only two active COVID-19 cases among its staff and none among its inmates.  See BOP: COVID-19, https://www.bop.gov/coronavirus/ (last visited Jan. 4, 2022).

Acknowledging that the Defendant's alleged obesity constitutes a risk factor for contracting the COVID-19 virus, and for a poorer prognosis if infected, Gomez has not

demonstrated that "extraordinary and compelling reasons" justify his release.[1]  Gomez has been fully vaccinated since May 2021.  (Govt. Br., Ex. B (Dkt. No. 264))  Accordingly, even though Gomez may suffer from medical conditions that increase his risk of severe illness from the COVID-19 virus, the fact that he is fully vaccinated makes the risk that he "'will contract COVID-19 and become seriously ill . . . extremely small.'"  United States v. Morel, 10 Cr. 798 (PAC), 2021 WL 2821107, at *1 (S.D.N.Y. July 7, 2021) (quoting United States v. Pabon, 17 Cr. 312 (JPC), 2021 WL 603269, at *4 (S.D.N.Y. Feb. 16, 2021)).

Finally, while (1) Gomez states that his children's "mother is struggling with mental health issues"; and (2) commentary to U.S.S.G. § 1B1.13 indicates that the "incapacitation of the caregiver of the defendant's minor child or minor children" constitutes "extraordinary and compelling reasons" for a defendant's release, see U.S.S.G. § 1B1.13 Application Note 1(C), Gomez has not provided sufficient information for this Court to conclude that "extraordinary and compelling reasons" justify his release.

Gomez's pre-sentence report indicates that he had a consensual relationship with Jessica Hernandez.  (PSR ¶ 53)  Hernandez reported to the probation officer that after Gomez was unfaithful to her, the two separated and that he moved out of the family home.  (Id. ¶ 58)  As of January 13, 2017, when the first version of the PSR was prepared, the couple had two sons, ages 13 and 8.  (Id. ¶ 53)  Given the passage of time, the two children would now be ages 18 and 13.  Given all of these circumstances, it is far from clear that Gomez's sons require his care or that he would be permitted to care for them in the family home if he were released.

---

[1] While Gomez also asserts that he suffers from "respiratory difficulties" (Def. Mot. (Dkt. No. 262) at 5), his BOP medical records from October 19, 2021 indicate that on that date Gomez denied suffering from any respiratory condition.  (Govt. Br., Ex. B (Dkt. No. 264) at 7)  Gomez's PSR likewise does not state that he suffers from a respiratory condition.

It is also worth noting that when Gomez sought compassionate release from the warden of his facility, he did not cite his girlfriend's mental health issues.  His PSR likewise makes no mention of his girlfriend's alleged mental health issues.

Gomez also does not explain the nature of the mental health issues that his girlfriend suffers from, and how long she has suffered from mental health issues.  Gomez likewise provides no details concerning his children – such as their ages – and he does not explain why no one else is available to care for them.  (See Def. Mot. (Dkt. No. 262) at 5)

The Court concludes that Gomez has not demonstrated that "extraordinary and compelling reasons" justify his release.

C.    Section 3553(a) Factors

Even if Gomez had exhausted his administrative remedies and proffered "extraordinary and compelling reasons" justifying his release, his application would still be denied, because the trial record and PSR demonstrates that he constitutes a danger to the community.

Gomez conspired to distribute and possess with intent to distribute 50 to 100 kilograms of cocaine.  He perjured himself at trial and has never accepted responsibility for his crime.  He also obstructed justice by suborning perjury from a co-conspirator who had become a cooperating witness.  Finally, Gomez had previously been convicted of a cocaine trafficking offense, for which he had received a sentence of one to three years' imprisonment.  (PSR ¶ 40) His prior conviction and sentence had no deterrent effect, indicating that a lengthy sentence of imprisonment was necessary.

## **CONCLUSION**

For the reasons stated above, the Defendant's application for compassionate release pursuant to 18 U.S.C § 3582(c)(1)(A)(i) is denied.   The Clerk of Court is directed to terminate the motion (Dkt. No. 262), and to mail a copy of this order to the Defendant at FCI Bastrop.

Dated: New York, New York
       January 5, 2022                        SO ORDERED.

                                         _____
                                         Paul G. Gardephe
                                         United States District Judge